UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARCO GARAY,
    Plaintiff,

v.

SOUTHWEST AIRLINES CO.,
    Defendant.

Case No. 18-cv-07538-PJH

**ORDER GRANTING MOTION TO REMAND**

Re: Dkt. No. 12

    Plaintiff Marco Garay's motion to remand came on for hearing before this court on February 20, 2019. Plaintiff appeared through his counsel, H. Scott Leviant. Defendant Southwest Airlines Co. ("Southwest") appeared through its counsel, Richard Rahm and C. Robert Harrington. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS plaintiff's motion, for the following reasons.

    This is a putative wage and hour class action originally filed in Alameda County Superior Court on October 25, 2018. Defendant employed plaintiff as a non-exempt, hourly employee from August 1, 2002, through September 2015. Dkt. 1, Ex. A ("Compl."), ¶ 19. Plaintiff alleges that Southwest violated various California labor laws by (i) failing to provide meal and rest periods, see id. ¶¶ 37-63 (first and second causes of action), (ii) failing to pay all wages and overtime due, id. ¶¶ 64-92 (third cause of action), (iii) failing to provide plaintiff with accurate wage statements, id. ¶¶ 93-99 (fourth cause of action), and (iv) failing to pay all final wages due upon termination of employment ("waiting time penalties"), id. ¶¶ 100-110 (fifth cause of action). Plaintiff brings this action on behalf of a putative class of all persons employed by Southwest who worked in

1  California beginning four years prior to the filing of plaintiff's action. Compl. ¶ 11.[1]

2  On December 14, 2018, defendant removed this action to federal court asserting that federal jurisdiction existed under the Class Action Fairness Act, 28 U.S.C. § 1453 ("CAFA"). CAFA "gives federal courts jurisdiction over certain class actions, defined in § 1332(d)(1), if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 551 (2014). The parties agree that the only issue is whether defendant has met its burden to show CAFA's $5 million dollar amount-in-controversy requirement has been met.

Though plaintiff alleges six causes of action, defendant relies on only plaintiff's second through fifth causes of action to satisfy the $5 million threshold. Defendants contend that those four claims, plus attorneys' fees, put over $134 million at controversy.

Fatal to defendant's contention, however, is the fact that defendant's proposed 100% violation rate is essentially speculative because it is unsupported by any evidence or allegation in the complaint. And speculation does not meet defendant's burden to show CAFA's amount-in-controversy requirement has been met.[2]

"A defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Dart Cherokee, 135 S. Ct. at 554 (citing 28 U.S.C. § 1446(a)). But if, after removal, the plaintiff contests the defendant's allegations regarding the amount in controversy, both parties submit proof and the court must decide by a preponderance of the evidence that the amount-in-controversy requirement is met. Id. at 553-54 (citing 28 U.S.C. § 1446(c)(2)(B)). To determine the amount in controversy, courts first look to the complaint. Ibarra v.

---

[1] Based on the first through third causes of action, plaintiff also asserts a claim under California's Unfair Competition Law, Bus. & Prof. Code § 17200. Compl. ¶¶ 111-27.

[2] In an attempt to appear conservative, defendant also calculates the amount in controversy as about $33.6 million based on a 25% violation rate. Because that's the type of arbitrary guessing that the Ninth Circuit has repeatedly prohibited, the court will disregard the 25% violation rate calculation.

2

Manheim Invs., Inc., 775 F.3d 1193, 1197 (9th Cir. 2015). If no damages are stated, or the defendant believes the claimed damages are understated, the defendant seeking removal bears the burden of showing "the aggregate amount in controversy exceeds $5 million[.]" Id. "[W]hen the defendant's assertion of the amount in controversy is challenged by plaintiffs in a motion to remand . . . CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." Id. at 1198. But "when the defendant relies on a chain of reasoning that includes assumptions to satisfy its burden of proof, the chain of reasoning and its underlying assumptions must be reasonable ones." LaCross v. Knight Transp. Inc., 775 F.3d 1200, 1202 (9th Cir. 2015).

In sum, remand is unwarranted if, after reviewing the pleadings and evidence, a court finds it is more likely than not the plaintiff put over $5 million in controversy. But where, as here, the pleadings and evidence do not establish the threshold jurisdictional amount by a preponderance of the evidence, the case must be remanded to state court.

The only evidence defendant submitted—a declaration from Michelle Inlow who is employed by Southwest as a "Senior Manager Engagement & Administration"—does not support any particular violation rate or amount in controversy. See Inlow Decl. ¶¶ 4-8. The declaration provides evidence only about the total number of putative class members, the average wage per hour, the general shift length and schedule, the average number of overtime hours worked per week, the number of wage statements per year, and the number of employees who separated employment from Southwest during the relevant time period. Id. That evidence does nothing to show how frequently the alleged violations occurred. For example, that putative class members may have been eligible to receive rest periods does not provide any evidence about whether or how often the defendant failed to provide rest periods. Similarly, that putative class members received 24 wage statements per year says nothing about whether or how often those wage statements were inaccurate. And evidence about the average number of overtime hours

3

worked by putative class members does not show how often, if at all, Southwest failed to pay overtime wages due.

To turn that insufficient evidence into support for its amount-in-controversy calculation, defendant argues that the complaint alleges "universal violations," which supports using a 100% violation rate. Thus, according to defendant, putative class members never received a rest period that complied with California labor laws, never received an accurate wage statement, never received all wages (or overtime) due in a pay period, and no employee ever received all wages due upon his or her termination.

"The Ninth Circuit [has] held that [allegations of] 'a pattern and practice of doing something does not necessarily mean always doing something, and that under such circumstances, the defendant 'bears the burden to show that its estimated amount in controversy relied on reasonable assumptions.'" Garza v. Brinderson Constructors, Inc., 178 F. Supp. 3d 906, 911 (N.D. Cal. 2016) (quoting Ibarra). However, if the language of the complaint indicates that the violations occurred as the result of "policies that applied 'uniformly' to all putative class members," then that may support concluding a uniform class-wide impact. Branch v. PM Realty Grp., L.P., 647 F. App'x 743, 746 (9th Cir. 2016). The distinction is whether the complaint alleges only a "pattern and practice" of labor law violations"—requiring additional proof of the frequency of the violation—or a "universal violation"—allowing the reasonable assumption that the violation occurred 100% of the time to all members of the class. LaCross v. Knight Transp. Inc., 775 F.3d 1200, 1202 (9th Cir. 2015). For example, a claim that alleges that all putative class members are misclassified (e.g., as independent contractors), alleges a "universal violation" of the applicable labor laws. Id. ("universal violation" alleged where putative class members were classified as "independent contractors" instead of "employees"). That is because if the violation is proven as to one class member on that issue, then the violation also occurred as to each other putative class member.[3]

---

[3] While this is a prototypical example, it is by no means the only way a "universal

4

Plaintiff's rest period, overtime, wage statement, and waiting time claims do not allege universal violations. With respect to plaintiff's overtime claim, defendant relies on paragraphs in the complaint that allege "plaintiff and the putative [class] w[ere] not paid for all overtime hours worked at the correct rate of pay." Compl. ¶ 29; see also Compl. ¶¶ 27, 78, 84 (similar). "But an employee's alleged failure to receive 'all'" overtime due "does not equate to a failure to receive 'any'" overtime due. Tejero v. NRG Energy Servs. LLC, No. 18-CV-04188-PJH, 2018 WL 6009705, at *2 (N.D. Cal. Nov. 16, 2018). And it is the latter that defendant's "universal violation" argument (and amount-in-controversy calculation) must establish. Defendant also points to plaintiff's allegation that Southwest has "applied centrally devised policies and practices . . . with respect to working conditions and compensation arrangements." Compl. ¶ 77; see also Compl. ¶ 80. "While that may be true, that alone does not support a 100 percent violation rate or, for that matter, any other violation rate." Id.; Garcia v. Lifetime Brands, Inc., No. EDCV 15-1924-JLS (SPx), 2016 WL 81473, *3 (C.D. Cal. Jan. 7, 2016) (rejecting defendant's 100% violation rate based on complaint's alleging a "uniform policy and systematic scheme"); Garcia v. Wal-Mart Stores Inc., 207 F. Supp. 3d 1114, 1124 (C.D. Cal. 2016) (same).[4]

While a closer call than the overtime-related allegations, the court finds, after allowing for "reasonable assumptions" and inferences, that the complaint's rest period-related allegations also do not support a 100% violation rate. The complaint alleges that "Defendant[ ] maintained a policy or practice of not providing members of the . . . class with net rest period[s] of at least ten minutes for each four hour work period[.]" Compl. ¶ 59 (emphasis added). That implies that defendant had an affirmative policy of not providing putative class members with rest periods that complied with California's labor

---

violation" may be alleged.

[4] Plaintiff's reliance on paragraph 28 of the complaint is also misplaced because that paragraph merely provides an "example" of a type of shift that Southwest allegedly failed to pay overtime for. It says nothing about whether Southwest had a uniform policy to not pay overtime for that type of shift and Southwest's evidence about average overtime worked says nothing about the number of overtime hours tied to that specific type of shift.

5

1 laws. But see Compl. ¶ 61 ("Specifically, defendant['s] written policies do not provide that
2 employees may take a [compliant] rest period for each four hours worked[.]"). The next
3 paragraph, however, clarifies that plaintiff does not allege that putative class members
4 never received rest periods. Compl. ¶ 60 ("Defendant[ ] failed to pay . . . additional
5 premium wages when required rest periods were not provided"). Paragraph 91 also
6 undermines defendant's argument (and paragraph 59's implication) by affirmatively
7 alleging that defendant sometimes paid putative class members in lieu of providing rest
8 periods. Compl. ¶ 91 (hourly wages did not include compensation paid "on the occasions
9 when defendant[ ] paid [putative class members] premium wages in lieu of [providing]
10 meal and/or rest periods"). In addition, while "[t]he allegation of a policy and practice may
11 make the assumption of violations against all class members reasonable[,] [i]t does not
12 shed light [ ] on the frequency of the violations." Rutledge v. Healthport Techs., LLC, No.
13 16-CV-06920-VC, 2017 WL 728375, at *2 (N.D. Cal. Feb. 24, 2017) (citing Ibarra).[5]

14     Defendant also fails to show that the complaint alleges "universal violations" with
15 respect to the wage statement and waiting time claims. First, defendant's argument with
16 respect to these claims largely depends on defendant establishing a 100% violation rate
17 with respect to the overtime and rest period claims. For the reasons discussed above,
18 defendant has not done so. Second, defendant provides no support for its argument that
19 because the complaint alleges Southwest acted "intentionally," the violation rate must be
20 100%. Third, as was the case with defendant's overtime argument, the waiting time and
21 wage statement related-allegations that defendant points to establish, at best, that
22 Southwest did not always comply with California's wage statement and waiting time laws;
23 not, as defendant must show, that Southwest never complied with those laws.[6]

---

[5] Paragraphs 33 and 35 of the complaint do not support defendant's argument for the same reason plaintiff's overtime allegations do not support a "universal violation" inference: Those paragraphs neither allege that putative class members never received rest breaks nor allege that putative class members never received rest period premiums due in lieu of receiving a compliant rest period. See Compl. ¶¶ 33-35.

[6] Defendant's waiting time argument fails for the additional reason that it assumes that each of the departing employees is entitled to the statutory maximum 30-day penalty.

6

**CONCLUSION**

For the foregoing reasons, the court finds that defendant has not met its burden of showing by a preponderance of the evidence that the amount in controversy exceeds $5 million. Accordingly, the court GRANTS plaintiff's motion and REMANDS the action to Alameda County Superior Court.

**IT IS SO ORDERED.**

Dated: February 28, 2019

_____
PHYLLIS J. HAMILTON
United States District Judge

---

The Ninth Circuit has rejected that assumption. See Garibay v. Archstone Communities LLC, 539 F. App'x 763, 764 (9th Cir. 2013) ("[Defendant] assumes that each employee would be entitled to the maximum [30 day waiting time] statutory penalty, but provides no evidence supporting that assertion.").